McKinney, J.
delivered the opinion of the court.
These- two causes were treated in argument as one, and not improperly, as they are identical in their facts; both bills asserting a right to the same slaves ; in the one case, on behalf of the person claiming the life-estate interest; and in the other, on behalf of those claiming the remainder. To the bill of William T. Williams and others, who claim the remainder, there was a demurrer, which was allowed by the chancellor, and the bill was dismissed. To the other bill, there was a plea of the several statutes of limitation, which was demurred to, the demurrer allowed, and bill dismissed; and both causes are brought here by appeal.
The first mentioned bill alleges, that the complainants are the only children of Frances A. Williams, (the complainant in the second bill.) That on the 22d day of March, 1828, Jesse Martin, the father of said Frances A., wishing to make some provision for the said Frances A. and her children, conveyed by bill of *413 sale, absolute upon Its face, to one William C. Conrad, certain slaves, namely, Jerry, Nancy and her two children, Mary and Amanda; that said bill of sale was not made or intended to operate as an absolute conveyance, but only as a mortgage ; that said Jesse Martin had become bound as surety for Ethel-dred Williams (the father of complainants, and husband of said Frances A.) to J. Williams, for about one hundred and ninety dollars; and to W. Mallory, for about two hundred dollars. And it was agreed between said Jesse Martin and William C. Conrad, that Martin should convey said slaves to Conrad; and that the latter should pay said debts, and hold said slaves until he was fully reimbursed out of their hire or services; and, upon being so reimbursed, he should convey them to the said Frances A. Williams, to her sole and separate use during life, and at her death they should go to her children. And that said Conrad promised the said Martin, that he, said Conrad, would execute his bond, binding himself to convey said negroes as aforesaid, when he was repaid the money advanced by him in the payment of said debts.
The bill further alleges, that Jesse Martin had great confidence in said Conrad, between whom there was a connexion by affinity; that Conrad never did execute a bond or make a conveyance of said slaves as he had promised to do; but, with the intent to defraud the complainants, evaded doing so during his life upon some pretence or other; most generally for the alleged reason that, as said Etheldred Williams, the father of said complainants, was an insolvent, improvident man, he feared that the slaves would be taken for his debts; but always promised that, at some future time, he would convey said slaves as he had agreed to do. It is further alleged that, in the year 1839, said William C. Conrad died; that by his last will and testament, he bequeathed all of said slaves, except one, to his brother George C. Conrad; the one excepted, namely, Mary, he gave to said Frances Williams for life; and *414 at her death, to her children; that said George C. Conrad qualified as executor of William C., and took and retained possession of said slaves until his death in 1849, and by his will disposed of them and their increase; and that the defendants Nancy Conrad and Alfred Robb are his executors.
The bill alleges, that the said William C. Conrad, in his lifetime, was fully paid, and overpaid the amount of money advanced as aforesaid, and that the slaves have increased considerably by births. The bill seeks to have the rights of the parties declared; that the defendants be enjoined from disposing of the slaves, and that they be required to execute bond for the proper care and forthcoming of said slaves at the termination of the life interest of Frances Williams.
The grounds of demurrer to this bill are, first, that a remainder in slaves cannot be created by parol; second, the lapse of time and statute of limitations ; and, third, that the personal representative of William C. Conrad is not a party to the bill.
1. As to the first ground. It is well settled that a remainder in slaves, or other chattels, to take effect after the determination of a life-estate interest, cannot be created without will, or deed, or other writing. Payne vs. Lassiter, 10 Yerg. 510; 1 Hum. 66, 74. But it is clear that the case under consideration does not fall within that principle. Taking the case stated in the bill to be true, as upon demurrer we are bound to do, there was a distinct, unequivocal declaration of trust in favor of the complainants. The conveyance of the slaves to William C. Conrad, was clearly and conclusively impressed with the character of a trust. The trust, by the terms of the agreement, was to have been put in writing by the execution of a conveyance from the trustee to Mrs. Williams for life, and then over to the present complainants. By the fraud of the trustee, as charged in the bill, this was not done dining his life; and, in violation of the trust, he disposed of the slaves,
*415 except one, as his own absolute property, by will. The fraudulent conduct of the trustee, in this instance, cannot affect the rights of the complainants. The doctrine is well established in equity, that if a party by fraud, or breach of a specific promise omits to do an act, or prevents an act from being done, equity treats the case as to him and all others who may be placed in his stead, as if it were done, and the other party is regarded as in the same situation as if the act had been done in the utmost good faith. 10 Yerg. 94; Id. 131. The statute of frauds has no application to a case where the agreement or declaration of trust was intended by the parties to be reduced to writing, but has been prevented from being done by the fraud or breach of promise of one of the parties. In such cases, the doctrine of a court of equity is, that the agreement or trust shall be specifically executed, for the very forcible reason, that otherwise, the statute designed to suppress fraud, would be the greatest encouragement and protection to fraud. 2 Story’s Eq., sec. 768. It is clear, therefore, that upon this ground the complainants cannot be repelled. Neither can they be repelled upon another ground suggested in the argument, namely, that they are strangers both to the agreement and to the consideration. Their equity rests upon the original consideration of the agreement between Martin and Conrad, by which agreement the trust in their favor was created. Even at law, it is held, that where an agreement is not clothed with the form of a deed, a person may be permitted, in some cases, to maintain the equitable action of assumpsit to enforce a stipulation for his benefit contained in an agreement, to which, nominally at least, he was not a party; more especially, where he stands in the relation of a child or relative to the person exacting such stipulation in his favor. And in equity it is well established, that, notwithstanding the general principle that, as between the parties, a contract will not be enforced, if without consideration, a third person, particularly if a relative, *416 may enforce a legal existing stipulation exacted from another in his favor, and for which the party exacting it has given a valuable consideration, plainly with a view to benefiting such third person, though such third person, as regards each of the contracting parlies, may be a volunteer. 2 Spence’s Eq. Jurisdiction, 284, 286.
2. It is very clear, that neither the statute of limitations of 1715, ch. 48, sec. 9, nor any other statute of limitations, interposes any bar to the relief sought by the complainants in the case now under consideration. The right of the complainants to the possession of the slaves has not accrued, and cannot accrue until the termination of the life interest of their mother. It matters not in this case, that the owner of the life-estate interest may have delayed to assert her right until the act of 1715 has barred her remedy; this can have no effect upon the rights of the complainants who claim the remainder interest. Their right of action, in the meaning of the statute of limitations, does not exist until the death of their mother; and, therefore, the statute cannot sooner attach or operate. Nevertheless, upon the facts alleged and admitted by the demurrer, the complainants have a clear right to maintain this bill. It is the settled law, that any owner of a life-estate, either in land or slaves, is quasi trustee for the remainder man. líe has the right to the beneficial use and enjoyment of the estate during his life; but he must take care to use it in such manner as that the rights of the remainder man shall not be defeated or prejudiced.
The remainder man has the right to require that the property shall be forthcoming at the termination of the life estate; and if there be reason to apprehend that a remainder in slaves will be defeated, or its value impaired, by the improper conduct of the owner of the particular estate, a court of equity will interpose for the protection of the rights of the remainderman. See 6 Hum, 55. Id. 428. And the same *417 relief will be granted, not only as against one claiming by purchase from the owner of the particular estate, but also as against one holding possession of the slaves adversely to the owner of the life interest by operation of the statute of limitations.
3. The third cause of demurrer, we think, is well taken. It is apparent from the face of the bill, that an account must be taken for the purpose of ascertaining whether or not the amount of money advanced by William C. Conrad as the consideration of the conveyance to him, was reimbursed out of the hire or services of the slaves, in his life-time, as is alleged. Upon this fact rests the complainants’ equity. If it were not so reimbursed, it must be refunded by the complainants in order to perfect their right. And it is obvious that, without having the personal representative of said William C. Conrad’s estate a party, no such account can be taken. If the money remains unpaid, it belongs to the estate of said Conrad, and will be assets in the hands of the representative of said estate. The result of our opinion in the case we have been considering, therefore, is, that the chancellor erred in allowing the demurrer upon the main grounds assumed, and the decree dismissing the bill be reversed and the cause be remanded to the chancery court, with leave to the complainants to amend their bill by making the personal representative of William C. Conrad a party defendant.
In the case of Frances Williams, the owner of the life-estate interest, we feel constrained to affirm the decree.
The defendants, in their plea, rely on the act of 1715, ch. 48, sec. 9, which provides that “ The creditors of any person deceased shall make their claim within seven years after the death of such debtor, otherwise such creditors shall be forever barred.”
This provision of the act of 1715 remains unrepealed. And the bar which it creates cannot be obviated by the allegation *418 in the bill, that the complainant, Frances Williams, was a feme covert in 1839; the time of William C. Conrad’s death; and so continued until the 8th of July, 1848; less than three years before the filing of this bill; because there is no exception or saving in this act in favor of infants, femes covert, or others laboring under disabilities; consequently, persons laboring under disabilities are as much within the bar as those who are free from disability. In the construction of this statute, it was settled at an early day, and the decision has been followed, that all persons are considered “creditors” who have demands originating from contracts or agreements. Thus, when the deceased had executed a bond for title to land; if the obligee elects to take the land, instead of damages, his “claim” is against the heir, not against the personal representative of the obligor, and must be asserted, by suit, within seven years from the obligor’s death, or be forever barred. Cooke’s R., 330, 338; 5 Haywood’s R., 69; Id. 224; see also 6 Yerg. 224, 227.
It is clear, that the case stated in the bill falls within the bar of this act; the right asserted to the life interest in the slaves, to take effect in possession after the satisfaction of Conrad’s debt, is a “claim” within its letter and meaning; and the complainants’ right to sue accrued, if not during the life of Conrad, at least upon his death.
It is not necessary in this case to enter into any discussion of the doctrine of the legal distribution of trust estates. As a general rule, upon the death of a sole trustee, who has made no disposition of the trust estate, and to whom no discretionary powers are given personally, in respect to the disposition of the trust estate, it devolves, according to its legal equity, upon his heir at law or personal representative. Hill on Trustees, 303. In the present case, the bequest of the slaves by Conrad, was a wrongful conversion of the trust property ; the possession of the executors or legatees, was not subservient to, but in opposition to the trust, and in hostility *419 to the rights of the complainant; and the latter having an immediate possessory right to the beneficial interest and enjoyment, which she failed to assert within the period of seven years, she is barred by the peculiar provision of the act of 1715, notwithstanding her coverture.
The decree will, therefore, be affirmed.